**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-61190-BLOOM/Valle**

FERN KOTTLER,

     Plaintiff,

v.

GULF COAST COLLECTION BUREAU, INC.,

     Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Fern Kottler's ("Plaintiff" or "Kottler")
Motion for Summary Judgment, ECF No. [19] ("Plaintiff's Motion"), and Defendant Gulf Coast
Collection Bureau, Inc.'s ("Defendant" or "Gulf Coast") Motion for Summary Judgment, ECF No.
[22] ("Defendant's Motion"). The Court has carefully considered Plaintiff's Motion and
Defendant's Motion, all opposing and supporting submissions, the record in this case, the
applicable law, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motion is
granted, and Defendant's Motion is denied.

## I.    BACKGROUND

This case arises as a result of an unpaid debt for medical services. In the Complaint, ECF
No. [1], Plaintiff alleges that she was injured in a workplace accident on February 5, 2018, for
which she received treatment in part provided by Radiology Physician Solutions of Florida, LLC
("RPS"). On June 6, 2018, Plaintiff received a letter from Gulf Coast, attempting to collect the
unpaid balance for services rendered by RPS. The letter advised that the account was referred for
collection and informed Kottler that she could request validation of the debt. Because Plaintiff's

injury occurred at work and was work-related, it was subject to Florida's Workers' Compensation Law, Fla. Stat. §§ 440.01, *et seq.* Therefore, Plaintiff contends that Defendant was not entitled to attempt to collect such medical debt from her. As a result, Plaintiff asserts one claim against Defendant for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; specifically, § 1692e(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt" based on Defendant's attempt to collect a debt for which Plaintiff was not legally responsible under Florida's Workers' Compensation Law.

## II.    RELEVANT FACTS

On February 5, 2018, Plaintiff was injured in a work-related accident, which required medical treatment. Plaintiff's Statement of Material Facts ("Pl.'s SOMF"), ECF No. [19-2] ¶ 1.[1] A portion of the medical treatment provided to Plaintiff for the injury was provided by RPS. *Id.* ¶ 3. Plaintiff contends that she discussed with all of the doctors and staff the fact that her injuries occurred during the course and scope of her employment, which Defendant disputes. *Id.* ¶ 4; Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s Resp. to SOMF"), ECF No. [30] ¶ 4. On February 27, 2018, Plaintiff filed a petition for workers' compensation benefits with Florida's Office of the Judges of Compensation Claims ("OJCC"). Defendant's Statement of Material Facts ("Def.'s SOMF"), ECF No. [23] ¶ 3. The petition requested two types of medical benefits—authorization for evaluation and treatment with a primary care physician and acceptance of compensability for the February 5, 2018 accident. *Id.* ¶ 4. On August 2, 2018, Plaintiff submitted another petition for benefits, specifically requesting acceptance of compensability for all medical services rendered by RPS. *See* ECF No. [23-1]. Plaintiff's workers' compensation case remained

---

[1] Where a fact is uncontroverted by the opposing party, the Court cites only to the originating Statement of Facts.

open at all times relevant to this case, and did not become final until May 20, 2019. Pl.'s SOMF ¶ 6.[2]

On June 2 or June 3, 2018, RPS forwarded Plaintiff's account to Gulf Coast for collection by uploading information to Gulf Coast's FTP (file transfer protocol) site. *Id.* ¶ 10; Deposition of Jack Brown, ECF No. [26] at 17. The pertinent information uploaded and relied upon by Gulf Coast included name, address, account balance, service date, creditor account number, and any insurance information. ECF No. [26] at 17. The file that RPS transmitted to Gulf Coast for Plaintiff's account listed United Healthcare as the primary insurance company, with Plaintiff as the guarantor, and there was no reference to workers' compensation in the file. Def.'s SOMF ¶ 6.

In general, if a workers' compensation carrier is identified by Gulf Coast, the account is flagged for additional "scrubbing" and manual review, including review of the Office of the Judges of Compensation Claims ("OJCC") website to obtain information related to a Workers' compensation claim. *Id.* ¶ 9. Defendant is aware of the OJCC website, and is aware that the site can be utilized to determine whether an account is subject to Workers' compensation. Plaintiff's Additional Facts ("Pl.'s Add'l"), ECF No. [33] ¶ 32. Pursuant to Gulf Coast's client services agreement, Gulf Coast's clients, including RPS, represent and agree to the best of their knowledge that all accounts referred to Gulf Coast for collection are in default. Def.'s SOMF ¶ 13. Based upon Gulf Coast's standard review of the information uploaded by RPS, there was no indication that Kottler's accounts were subject to workers' compensation or bankruptcy. *Id.* ¶ 14; *see also* ECF No. [26] at 21-23. As a result, Gulf Coast issued what it characterizes as its standard validation letter, which characterization Plaintiff disputes. Def.'s SOMF ¶ 15; Pl.'s SOMF ¶ 15.

---

[2] Plaintiff's SOMF states that the claim became final on May 20, 2020, but a review of the documentation attached to the SOMF demonstrates that the correct date is May 20, 2019. *See* ECF No. [19-3] at 10.

Plaintiff received a letter dated June 6, 2018 from Gulf Coast with respect to two amounts billed by, and owed to, RPS. Pl.'s SOMF ¶ 11; *see also* ECF No. [19-1] (the "Letter"). In pertinent part, the Letter stated that "[t]he above account has been listed with Gulf Coast Collection Bureau for collection," and further that, "[t]his is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector." Pl.'s SOMF ¶¶ 14-15. At the time Defendant sent the Letter, the following information was available on the OJCC website: the date of Plaintiff's accident, the state and county in which the accident occurred, a detailed description of the accident, the parts of the body injured, and the job being performed. Pl.'s Add'l ¶ 36. However, Defendant made no attempt prior to sending the Letter to confirm whether the medical bills referenced in the Letter arose in connection with treatment for a workplace injury. *Id.* ¶ 37.

While not a material issue of fact, the parties dispute whether the Letter constitutes a demand or validation. Even so, it is Gulf Coast's policy to hold collection activity for at least forty-five (45) days from the mailing of the initial letter to allow the consumer time to submit a request for validation of the debt. Def.'s SOMF ¶ 18. Plaintiff called Gulf Coast on June 11, 2018, in response to the Letter. *Id.* ¶ 19. During the call, Plaintiff advised Gulf Coast that the bill was related to a workplace injury, and that it had been denied. *Id.* ¶¶ 20-21. As a result of Plaintiff's call, the Gulf Coast agent marked the account as attorney work flow, removed the home telephone number and address to prevent future collection attempts directed toward Plaintiff, and Gulf Coast made no further communications to Plaintiff after the June 11, 2018 telephone call. *Id.* ¶¶ 20, 22.

Gulf Coast maintains written policies regarding compliance with workers' compensation laws that provide, in pertinent part, that agents shall be trained not to pursue a consumer whose account is subject to protection under a state's workers' compensation statute and shall cease any

collection activity against the consumer on an account once it is learned that the account is subject to workers' compensation. *Id*. ¶¶ 23-25. In addition, it is Gulf Coast's policy to investigate whether its client, the original creditor, had knowledge of the workers' compensation status and failed to communicate such status to Gulf Coast. *Id.* ¶ 26. Thereafter, Gulf Coast's compliance office is required to report the findings of this investigation to the executive team. *Id.* ¶ 27.

### III.    LEGAL STANDARD

The parties have filed and briefed cross-motions for summary judgment on the same legal issues—whether Gulf Coast violated the FDCPA by sending the Letter, and if so, whether Gulf Coast is entitled to the bona fide error defense. A district court applies the same legal standards when ruling upon cross-motions for summary judgment as it does when only one party files a motion. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Id*. (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 ((N.D. Ga. 2014)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S.

at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material

fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers Plaintiff's Motion and Defendant's Motion.

## IV.     DISCUSSION

In order to prevail on a FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt

collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.,* 88 F. Supp. 2d 1355, 1360-1361 (S.D. Fla. 2000) (quoting *Sibley v. Firstcollect, Inc.,* 913 F. Supp. 469, 470 (M.D. La. 1995)). In this case, the first two elements are undisputed. Thus, the Court must examine whether Gulf Coast engaged in an act or omission prohibited by the FDCPA.

Plaintiff argues that because Florida's Workers' Compensation Law specifically shields Plaintiff from liability for expenses incurred as a result of an injury sustained in the course and scope of employment, the Letter violates the FDCPA because it falsely implies otherwise. Plaintiff argues further that she was shielded from financial liability because her Workers' compensation claim was pending at the time the Letter was sent. Defendant argues that it did not violate the FDCPA when it sent the Letter because Plaintiff's workers' compensation claim had been denied by the employer/carrier as of the date of the communication. Defendant contends that a genuine issue of material fact exists as to whether the Letter contains a false statement because the Letter did not include an explicit demand for payment or otherwise state that Plaintiff was responsible for the debt.[3] Defendant argues further that a violation of the Workers' Compensation Law does not constitute a *per se* violation of the FDCPA, where there has been no determination that the debt is compensable. Finally, Defendant argues that, should the Court find that Defendant committed a violation, the bona fide error defense applies.

**A. Florida's Workers' Compensation Law shields an employee from liability**

At the outset, the Court notes that the relevant inquiry is not whether a violation of the Florida Workers' Compensation Law has occurred, because the Workers' Compensation Law is

---

[3] The FDCPA prohibits false representations about "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

not a debt collection or debt collection practices statute. Rather, the relevant inquiry is whether Defendant's sending of the Letter during the pendency of Plaintiff's Workers' compensation claim (which is undisputed) constitutes a violation of the FDCPA under the facts of this case.

The purpose of the Workers' Compensation Law and its intended application are as follows:

> It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the Workers' return to gainful reemployment at a reasonable cost to the employer. It is the specific intent of the Legislature that workers' compensation cases shall be decided on their merits. The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike. [. . .] It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker. Therefore, an efficient and self-executing system must be created which is not an economic or administrative burden. The department, agency, the Office of Insurance Regulation, and the Division of Administrative Hearings shall administer the Workers' Compensation Law in a manner which facilitates the self-execution of the system and the process of ensuring a prompt and cost-effective delivery of payments.

Fla. Stat. § 440.015.

In pertinent part, the Workers' Compensation Law states that "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter." Fla. Sta. § 440.13(13)(a). The statute further states that "[t]he employee is not liable for payment for medical treatment or services provided pursuant to this section except as otherwise provided in this section." Fla. Stat. § 440.13(13)(g).

Plaintiff argues that the protections from financial liability pursuant to Fla. Stat. § 440.13(13)(g) applies in this case because her Workers' compensation claim was continuously pending, and not finally resolved until May 2019. Defendant argues that the statute's protections

were not yet triggered because the employer/carrier had denied compensability of Plaintiff's claim at the time the Letter was received.

Defendant's argument ignores the plain language of the Workers' Compensation Law that insulates an injured employee from liability. Indeed, "the workers' compensation law makes the employer and insurance carrier legally responsible for paying medical bills, while the employee is insulated from liability." *Sun Bank/South Fla., N.A. v. Baker*, 632 So. 2d 669, 671 (Fla. 4th DCA 1994). Therefore, contrary to Defendant's assertion, when an account is subject to a Workers' compensation claim, an employee is not liable for payment unless and until a determination is made that the employee is liable. To hold otherwise would undermine the purpose of the Workers' Compensation Law and would ignore the liability insulating language of the statute.

In addition, in the context of the FDCPA, a contrary holding would improperly incentivize debt collectors to quickly attempt to collect debts otherwise subject to Workers' compensation before either an employer/carrier accepts compensability of a claim, or a judge of compensation claims determines that a claim is compensable. An interpretation causing such an incentive does not align with the purpose of the FDCPA through which "Congress sought to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *LeBlanc*, 601 F.3d at 1190 (quotations and citations omitted).

### B.  The Letter violates the FDCPA

Defendant argues that Plaintiff fails to establish a violation of section 1692e(2)(A) because her Workers' compensation claim was denied as of the date of the Letter. However, Defendant's argument conflates denial of a claim with the employer/carrier's refusal to accept compensability,

and, in any event, assumes that the correct interpretation of the Workers' Compensation Law is that an employee is not shielded from liability until the employer/carrier accepts compensability, or a judge determines that a claim is covered. The Court has already determined that such an interpretation is incorrect. Moreover, Defendant's reliance on *Sansone v. Crum*, 201 So. 3d 1289 (Fla. 1st DCA 2016) to suggest otherwise is misplaced.

In *Sansone*, the question before the court was an employer/carrier's liability for attorney's fees under section 440.34(3)(b),[4] which contains a thirty-day grace period for employers/carriers.[5] As characterized by the court, the specific question addressed was "what happens if the carrier or employer accepts responsibility for medical expenses within thirty days but does not actually pay the medical bills until after thirty days." *Sansone*, 201 So. 3d at 1290. In answering the question before it, the court held "that so long as the carrier or employer accepts responsibility for medical expenses within the thirty-day grace period, it is not liable under section 440.34(3)(b) for fees associated with those benefits." *Id.* As such, *Sansone* is inapposite. Moreover, *Sansone* is not helpful with respect to this Court's inquiry regarding whether the Letter in this case violated the FDCPA.

The FDCPA is a "consumer-protection statute intended to 'eliminate abusive debt collection practices' to ensure that 'debt collectors who refrain from using abusive debt collection

---

[4] "If any party should prevail in any proceedings before a judge of compensation claims or court, there shall be taxed against the non-prevailing party the reasonable costs of such proceedings, not to include attorney's fees. A claimant is responsible for the payment of her or his own attorney's fees, except that a claimant is entitled to recover an attorney's fee . . . from a carrier or employer: In any case in which the employer or carrier files a response to petition denying benefits with the Office of the Judges of Compensation Claims and the injured person has employed an attorney in the successful prosecution of the petition." Fla. Stat. § 440.34(3)(b).

[5] "Regardless of the date benefits were initially requested, attorney's fees shall not attach under this subsection until 30 days after the date the carrier or employer, if self-insured, receives the petition." Fla. Stat. § 440.34(3).

practices are not competitively disadvantaged,' and 'to promote consistent state action in protecting consumers against debt collection abuses.'" *Leonard v. Swicker*, 713 F. App'x 879, 881 (11th Cir. 2017) (quoting *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1312-13 (11th Cir. 2015)). The FDCPA regulates "debt collector" conduct by giving consumers the right to sue debt collectors that violate its provisions. *Id.* (citing *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014)). "The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation. Only those collection activities that use 'any false, deceptive, or misleading representation or means, including '[t]he threat to take any action that cannot legally be taken' under state law, will also constitute FDCPA violations." *LeBlanc*, 601 F.3d at 1192. Not "all debt collector actions in violation of state law constitute *per se* violations of the FDCPA. Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." *Id.*

Here, the parties disagree with respect to the nature of the Letter. Plaintiff contends that the Letter was a collection letter, while Defendant contends that it was simply a validation notice. To determine whether a representation violates the FDCPA, the Court must view a defendant's actions through the eyes of the "least sophisticated consumer." *Jeter v. Credit Bureau. Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). The 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness. *LeBlanc*, 601 F.3d at 1194 (internal quotations and citations omitted). Even so, "[t]his standard does not depend on the plaintiff's

individual perception or the perception of a reasonable consumer; rather, it depends on whether the least sophisticated consumer would know that the particular statement was false." *Malone v. Accounts Receivable Res., Inc.*, 408 F. Supp. 3d 1135, 1343 (S.D. Fla. 2019) (citing *Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 613 (11th Cir. 2017)).

While the parties dispute the correct characterization of the Letter, they do not dispute its contents. In this case, the Letter states as follows:

The above account has been listed with Gulf Coast Collection Bureau for collection.

To make a payment online, please visit us at: **www.gccb.net**.

All communications and correspondence can be delivered via our web site. Please visit us at **www.gulfcoastcollection.com**.

You may mail payments and/or correspondence to **Post Office Box 21239, Sarasota, FL 34276-5509**.

To speak to a representative, please call **866-991-7360**.

Our hours of operation are from 8 A.M. – 7 P.M., Monday – Friday.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. This is a communication from a debt collector.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

Gulf Coast Collection Bureau

ECF No. [19-1]. Plaintiff argues that the Letter should be construed as a demand for payment, and therefore false and a violation of the FDCPA, because it invites an online payment and provides a

physical address for mailing payments. In contrast, Defendant argues that the Letter does not contain an explicit demand for payment or otherwise state that Plaintiff is responsible for the debt; but rather, the Letter identifies the debt, advises that it has been listed with Gulf Coast for collection, and provides payment options. As such, Defendant argues that there is a genuine issue of material fact as to whether the Letter contains a false statement or false implication that she is obligated to pay the debt.

In general, "[w]hether a particular communication is false or deceptive is a question for the jury." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) (citing *Jeter*, 760 F.2d at 1178)); *see also Newman v. Ormond*, 456 F. App'x 866, 868 (11th Cir. 2012) ("where the parties agree on the basic facts of the case, but reasonably disagree upon the proper inferences to be drawn from the debt collector's actions, there exists a genuine issue of material fact that should be determined by the trier of fact and not by the court in a summary judgment context."). In this case, however, there is no genuine issue of material fact as to whether the Letter contained a false representation of the character or legal status of the debt because Plaintiff was not liable under Florida's Workers' Compensation Law for payment of the RPS debt. Importantly, Defendant does not dispute the contents of the Letter and the Court has already rejected Defendant's interpretation of the Workers' Compensation Law. As such, regardless of how the Letter may be characterized—as a demand or validation—it is a communication in connection with the collection of a debt; it is an attempt to collect a debt. The Letter was sent to Kottler, and states, in pertinent part, "[t]o make a payment online [. . . and] [y]ou may mail payments . . . ." ECF No. [19-1]. In addition, the Letter provides instructions for disputing the validity of the debt and warns Kottler that, should she not dispute its validity, Defendant will assume the debt to be valid. Because Plaintiff was not liable for payment under the Florida's Workers' Compensation

Law, unless and until a determination was made otherwise, the statements in the Letter sent to Plaintiff concerning the ability to make a payment online or by mail, and Defendant's expressed assumption that the debt was valid unless she disputed its validity, constitute false representations of the character or legal status of the RPS debt. This is true regardless of whether the Letter itself is characterized as a demand or a validation. The least sophisticated consumer would not understand the nuances of Florida's Workers' Compensation Law and would not know whether she was obligated to pay the debt, especially during the pendency of her Workers' compensation claim. Therefore, the least sophisticated consumer would not know that the Letter contained false statements. As a result, the Letter violated the FDCPA as a matter of law. *See Malone*, 408 F. Supp. 3d at 1343-44 (determining that letter violated FDCPA as a matter of law, where there was no dispute that referred debt was covered under Workers' compensation); *see also Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508-ROSENBERG/MATTHEWMAN, 2018 WL 3997929, at *4 (S.D. Fla. Aug. 21, 2018) (determining as a matter of law that least sophisticated consumer would interpret letter as requiring that validity of a debt be disputed in writing, despite use of the word "please").

### C.  Gulf Coast is not entitled to the bona fide error defense[6]

Defendant argues that should the Court find that the Letter violated the FDCPA, the violation resulted from a bona fide error, as Gulf Coast instituted several procedures to avoid

---

[6] Defendant has asserted seven affirmative defenses in its Answer, ECF No. [6], only one of which—bona fide error—Plaintiff argues is proper in the context of this FDCPA claim. *See* ECF No. [19] at 10. Defendant did not respond to this aspect of Plaintiff's argument in its Response and is therefore deemed to have abandoned its remaining affirmative defenses. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (internal quotations and citation omitted). In any event, the Court agrees with Plaintiff that bona fide error is the only properly asserted defense here.

collection of accounts subject to Workers' compensation. Plaintiff in turn argues that she is entitled to summary judgment on the bona fide error defense because Defendant's procedures address Workers' compensation claims only after Defendant learns that a given account is subject to Workers' compensation. Therefore, Defendant has no procedure designed to determine whether an account is subject to Workers' compensation before initiating collection activity.

In the context of the FDCPA, "[i]t is irrelevant whether [the p]laintiff actually was misled. It also is irrelevant whether [the defendant] intended to mislead her." *Abby v. Paige*, No. 10-23589-CIV, 2013 WL 141145, at *7 (S.D. Fla. Jan. 11, 2013) *aff'd*, 553 F. App'x 970 (11th Cir. 2014). That is, "[t]he FDCPA is a strict liability statute." *Ferguson v. Credit Mgmt. Control*, Inc., 140 F. Supp. 2d 1293, 1297 (M.D. Fla. 2001); *see LeBlanc*, 601 F.3d at 1190 ("The FDCPA does not ordinarily require proof of an intentional violation and, as a result, is described by some as a strict liability statute.") (citing 15 U.S.C. § 1692k). "Debt collectors may not make false claims, period." *Randolph v. IMBS Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

"Nevertheless, the FDCPA affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011); *see* 15 U.S.C. 1692k(c) ("A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). "A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation . . . : (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (citing *Johnson v.*

*Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006)). "The failure to meet any one of those three requirements is fatal to the defense." *Id*.

Because Gulf Coast did not know that Kottler's debt was due to a work-related injury or that her debt was subject to Workers' compensation, the Court finds that Defendant acted unintentionally and that sending her the Letter resulted from a bona fide error. Notably, the parties here do not dispute the first two prongs of the inquiry. Rather, the parties disagree as to whether Defendant has met the third requirement, namely that it maintained procedures reasonably adapted to avoid the error. "[T]he procedures component of the bona fide error defense involves a two-step inquiry." *Owen*, 629 F.3d at 1273-74 (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). "The first step is whether the debt collector maintained—*i.e.* actually employed or implemented—procedures to avoid errors." *Id.* at 1274 (quotations and citation omitted). "The second step is whether the procedures were reasonably adapted to avoid the specific error at issue." *Id*.

Defendant satisfies the first step of the Court's inquiry as it employs and/or implements various procedures to avoid errors. Defendant points to several procedures it contends are designed to avoid collection of accounts subject to Workers' compensation. First, Gulf Coast performs a data scrub on each file received from its creditor-client, which reviews certain data elements for indications of possible Workers' compensation coverage—such as the most common Workers' compensation carriers—and if a Workers' compensation carrier is identified, Gulf Coast conducts further scrubbing and manual review, including review of the OJCC website prior to mailing an initial notice to the debtor. If there are no indicators of Workers' compensation after the data scrubs, the initial notice is mailed to the consumer, and it is Gulf Coast's policy that the letter is not a demand for payment. In addition, Gulf Coast trains its employees that consumers should not

be pressured to pay within the validation period, and on Workers' compensation laws. Collection activity is held for forty-five (45) days after mailing the initial validation notice. Defendant also trains employees to cease collection upon receiving notice that an account may be subject to Workers' compensation. Furthermore, pursuant to its client services agreement, all Gulf Coast clients, like RPS, represent and agree to the best of their knowledge that all accounts referred for collection are in default. If an account placed with Gulf Coast is determined to be covered by Workers' compensation, Gulf Coast investigates whether its client had knowledge of the status and failed to communicate it to Gulf Coast, and then Defendant's compliance office reports its findings to the executive team for further handling.

Upon review, however, these procedures do not satisfy the second step of the Court's inquiry, in that the majority of the procedures Defendant points to are not reasonably adapted to avoid the error at issue in this case—attempting to collect a debt subject to Workers' compensation. First, the suspension of collection communications after Kottler contacted Defendant is not a procedure reasonably adapted to avoid a Workers' compensation error. It is a statutory requirement. *See Owen*, 629 F.3d at 1275; *see also Malone*, 408 F. Supp. 3d at 1346. Similarly, the investigation and reporting undertaken to determine if a creditor fails to properly communicate that an account is subject to Workers' compensation only occurs after the fact and may be properly viewed only as a procedure intended to prevent the error from reoccurring. *Owen*, 629 F.3d at 1275. "Congress designed the FDCPA to prevent debt collection abuses, not to furnish debt collectors with a free pass as to errors in their first collection attempts." *Id.*

Indeed, the only relevant procedures identified by Defendant are the scrubs performed on the information received from its clients. And as Defendant itself admits, unless the client has noted its record transmitted to Defendant with some information implicating Workers'

compensation, Defendant undertakes no further review to independently determine whether an account referred to it is subject to Workers' compensation. Thus, contrary to Defendant's assertion, the facts in this case are undisputed that Gulf Coast relies primarily on information provided by its creditors—in this case RPS—to ascertain whether an account may be subject to Workers' compensation. *See* Brown Depo., ECF No. [26-1] at 24. It is only after the initial scrub of the information provided by the creditor-client flags a potential Workers' compensation issue that Gulf Coast undertakes a secondary scrub and manual review, including review of the OJCC website. *See id*. at 22-23.

Furthermore, Gulf Coast is not entitled to rely on its contract with creditors such as RPS to excuse it from violations of the FDCPA. *See Owen*, 629 F.3d at 1275 ("Employing a one-time form contract . . . and blindly relying on creditors to send only valid debts is a procedure, but it is not one reasonably adapted to avoid the type of erroneous . . . charges at issue here."). While the FDCPA does not require Gulf Coast to independently verify the validity of the debt, the bona fide error defense places an affirmative statutory obligation on a debt collector to maintain procedures reasonably adapted to avoid readily discoverable errors. *See id* at 1276-77. It is well-settled that a debt collector "does not fulfill this affirmative obligation by delegating it entirely to creditors . . . whose actions are not even regulated by the FDCPA." *Id.* at 1277. Here, it is undisputed that Gulf Coast was aware of the OJCC website. It was also aware that it can be used to obtain information regarding Workers' compensation claims and information regarding Plaintiff's claim was available on the website. However, Gulf Coast only undertakes a review of the OJCC website if the information provided by its creditor-client contains some indicator of a Workers' compensation issue. The record reflects that Defendant's corporate representative gave sworn testimony that he is familiar with the OJCC, and that during Gulf Coast's scrubbing process, "if there's anything on

19

the account that indicates it's subject to work comp or has any of the work comp carriers, or if a consumer identifies an account is subject to work comp, we will then go through a manual process to obtain that information from the website." ECF No. [26-1] at 25. However, he also conceded that in Kottler's case, Gulf Coast did not attempt to access the OJCC website prior to sending the Letter because "we didn't have any indication that would lead us to look at that," *id*. at 25-26, and that Gulf Coast does not do a manual look up of every account it receives. *Id*. at 44.

Indeed, Gulf Coast has not pointed to any other internal controls it uses to reduce the incidence of improper debt collection of accounts subject to Workers' compensation. In fact, Defendant's corporate representative testified that Gulf Coast relies on the information provided by its clients and does not independently try to determine if a bill is related to service provided in the course of a worker's compensation claim. *Id*. at 23-24. As a result, the Court finds that Gulf Coast's procedures are not reasonably adapted to avoid the error at issue in this case. There is no genuine issue of material fact with respect to the lack of procedures addressing the specific issue in this case. As a result, Plaintiff is entitled to summary judgment on the bona fide error defense.

For the reasons stated above, the Court grants summary judgment to Plaintiff to the extent that the Court concludes that Defendant has violated the FDCPA. Plaintiff did not address damages in her Motion, and the Court notes that the Complaint seeks damages for Defendant's violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a). *See* ECF No. [1]. The FDCPA provides in pertinent part that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—any actual damage sustained by such person as a result of such failure; [and] in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000[.]" 15 U.S.C. § 1692k(a)(1)-(2). In the Complaint, Plaintiff does not seek actual damages, but requests the

Case No. 19-cv-61190-BLOOM/Valle

maximum statutory damages of $1,000.00, and demands a trial by jury. The FDCPA requires that the question of statutory damages be submitted to a jury. *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 533 (11th Cir. 2017). As such, this matter must proceed to trial on the issue of damages.

**V.      CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [19]**, is **GRANTED**. Defendant's Motion, **ECF No. [22]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 13, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record